## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LIFEGUARD LICENSING CORP.** and
**POPULARITY PRODUCTS, LLC,**

               Plaintiffs,

          - against -

**JERRY KOZAK, ANN ARBOR T-SHIRT
COMPANY, LLC** and **RICHARD WINOWIECKI,**

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 15-CV-08459-LGS
Judge Lorna G. Schofield
Magistrate Judge James C. Francis IV

---

## MEMORANDUM OF LAW
## OF DEFENDANTS ANN ARBOR T-SHIRT COMPANY LLC,
## JERRY KOZAK, AND RICHARD WINOWIECKI
## IN SUPPORT OF MOTION TO DISMISS

---

**HEED LAW GROUP, PLLC**
39555 Orchard Hill Place
Suite 600
Novi, Michigan 48375
Telephone: (248) 465-8655
Facsimile: (248) 348-5760
Pro Hac Vice Application Pending

*Of Counsel:*
   Thomas P. Heed

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866

*Of Counsel:*
   Norris D. Wolff
   Joshua K. Bromberg

Attorneys for Defendants

**ANN ARBOR T-SHIRT COMPANY LLC, JERRY
KOZAK, and RICHARD WINOWIECKI**

# TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES .................................................................................................. iii

Preliminary Statement.......................................................................................................... 1

Relevant Facts ...................................................................................................................... 2

I.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT IS A
    COMPULSORY COUNTERCLAIM, UNDER FRCP 13, OF A PRIOR FILED
    MICHIGAN ACTION ................................................................................................ 6

   A.  The General Rule is That the First Filed Suit Should Have Priority ........................ 6

   B.  A Compulsory Counterclaim is Necessarily Duplicative ............................................ 6

   C.  It Is an Abuse of Discretion not to Dismiss a Second Filed Suit When It Is a
       Compulsory Counterclaim of the First Filed Suit ...................................................... 7

   D.  The Present Suit Should be Dismissed Because It Is a Compulsory
       Counterclaim of an Earlier Filed Declaratory Judgment Act Suit in the
       Eastern District of Michigan ........................................................................................ 7

II.  THE COURT SHOULD DISMISS THE COMPLAINT UNDER FRCP
     12(B)(2) BECAUSE IT IS LACKS PERSONAL JURISDICTION OVER THE
     DEFENDANTS .......................................................................................................... 9

   A.  Defendants Are Not Subject to Personal Jurisdiction in this Court Under the
       New York Statutes. .................................................................................................... 10

      1.  New York has no general jurisdiction over Defendants. ..................................... 10

      2.  New York has no specific jurisdiction over Defendants. ..................................... 13

   B.  Exercising Personal Jurisdiction Over Defendants in this Action Would
       Offend the Due Process Clause of the Fourteenth Amendment. ............................... 15

      1.  Defendants are not subject to general jurisdiction because Defendants do
          not have continuous and systematic contacts with New York ........................... 16

      2.  Defendants are not subject to specific jurisdiction in New York. ....................... 16

         (a)  Defendants did not purposefully avail themselves of the privilege of
              conducting activities in New York. ............................................................... 16

         (b)  Plaintiff's claims do not arise out of activities directed at New York. ............ 17

         (c)  The exercise of jurisdiction would not be constitutionally reasonable. ........... 17

III.  CONCLUSION .......................................................................................................... 19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

Adam v. Jacobs,
    950 F. 2d 89 (2d Cir. 1991)...................................................................6, 7, 9

AEP Energy Services Gas Holding v. Bank of America,
    626 F. 3d 699 (2d Cir. 2010)...................................................................7

Aquascutum of London, Inc. v. S.S. Amer. Champion,
    426 F.2d 205 (2d Cir. 1970)...................................................................11

Autogenomics, Inc. v. Oxford Gene Technology Ltd.,
    566 F.3d 1012 (Fed. Cir. 2009)...................................................................9

Bank Brussels Lambert v. Fiddler Gonzalez,
    305 F.3d 120 (2d Cir. 2002)...................................................................16, 17

Beacon Enterprises, Inc. v. Menzies,
    715 F.2d 757 (2d Cir. 1983)...................................................................11, 12

Bensusan Rest. Corp. v. King,
    126 F.3d 25 (2d Cir. 1997)...................................................................15

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)...................................................................18

Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,
    233 F.3d 697 (2d Cir. 2000)...................................................................7

Curtis v. Citibank, NA,
    226 F. 3d 133 (2d Cir. 2000)...................................................................6

Delagi v. Volkswagenwerk AG,
    29 N.Y.2d 426 (1972)...................................................................12

Helicopteros Nacionales de Columbia, S.A. v. Hall,
    466 U.S. 408 (1984)...................................................................16

Hutton v. Priddy's Auction Galleries, Inc.,
    275 F. Supp. 2d 428 (S.D.N.Y. 2003)...................................................................9

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)...................................................................15, 18

Jones v. Ford Motor Credit Co.,
    358 F. 3d 205 (2d Cir. 2004)...................................................................6

Keeton v. Hustler Magazine, Inc.,
    465 US 770 (1984)...............................................................................16

Landoil Res. Corp. v. Alexander & Alexander Serv. Inc.,
    918 F.2d 1039 (2d Cir. 1990)...........................................................10, 11

Laufer v. Ostrow,
    449 N.Y.S.2d 456 (1982).......................................................................12

McGowan v. Smith,
    52 N.Y.2d 268 (1981)............................................................................13

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)..................................................................9, 18

Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,
    804 F.2d 16 (2d Cir.1986)....................................................................6, 8

Pieczenik v. Dyax Corp.,
    265 F.3d 1329 (Fed. Cir. 2001)..........................................................10, 13

Welsh v. Servicemaster Corp.,
    930 F. Supp. 908 (S.D.N.Y. 1996). C......................................................13

Wiwa v. Royal Dutch Petroleum Co.,
    226 F.3d 88 (2d Cir. 2000)....................................................................10

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)..............................................................................18

Zibiz Corp. v. FCN Tech.Solutions,
    777 F. Supp. 2d 408 (E.D.N.Y. 2011) ...................................................13

**Statutes**

C.P.L.R. 302(a)(1) ...................................................................................13

C.P.L.R. §301.............................................................................10, 11, 12

C.P.L.R. §302.................................................................................13, 15

FED.R.CIV.P 12(B)(2) ...................................................................9, 10, 19

FED.R.CIV.P 13 ...................................................................................6, 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIFEGUARD LICENSING CORP. and
POPULARITY PRODUCTS, LLC,

                Plaintiffs,

            - against -

JERRY KOZAK, ANN ARBOR T-SHIRT
COMPANY, LLC and RICHARD WINOWIECKI,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 15-CV-08459-LGS
Judge Lorna G. Schofield
Magistrate Judge James C. Francis IV

## MEMORANDUM OF LAW
## OF DEFENDANTS ANN ARBOR T-SHIRT COMPANY LLC,
## JERRY KOZAK, AND RICHARD WINOWIECKI
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

      DEFENDANTS ANN ARBOR T-SHIRT COMPANY LLC, JERRY KOZAK, and

RICHARD WINOWIECKI ("Defendants"), by and through their undersigned attorneys,

respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's

complaint.  As grounds therefor, Defendants state as follows:

### <u>Preliminary Statement</u>

      The present action is a trademark infringement suit alleging that Defendants infringed

Plaintiff Lifeguard Licensing's mark by using the word, "Lifeguard," on the front of T-Shirts and

tank-tops.  The present action is the second-filed case between the parties; a prior-filed

Declaratory Judgment Act action in the Eastern District of Michigan, Docket No. 4:15-cv-13647-

LVP ("Michigan Action"), seeks to determine if the Plaintiff's mark is generic, or in the alternative, if the Defendants' use of the Plaintiffs mark is a functional, fair, or descriptive use.[1]

The present action ought to be dismissed because it is a compulsory counterclaim to the earlier-filed Michigan Action, and no special circumstances, such as forum shopping or a rush to the court house, justify a departure from the first-to-file rule.  Alternatively, the present action ought to be dismissed because the Court lacks personal jurisdiction over the Defendants.

## **Relevant Facts**

Defendant Jerry Kozak ("Kozak") is an individual residing in Ann Arbor Michigan. (Kozak Decl., ¶ 1).  Defendant Richard Winowiecki ("Winowiecki") is an individual residing in Ann Arbor, Michigan.  (Winowiecki Decl., ¶ 1).  Kozak and Winowiecki own Ann Arbor T-Shirt Company LLC ("Ann Arbor T-Shirt").   (Kozak Decl., ¶ 1 and Winowiecki Decl., ¶ 1).  Ann Arbor T-Shirt is a Michigan limited liability company, with its registered office and principal place of business at 2275 South Industrial Highway, Ann Arbor, Michigan 48104. (Heed Decl., ¶ 1).

Plaintiff Lifeguard Licensing Corp. is a Delaware corporation that owns, for international class 25 ("IC025"),  the federal trademark registration nos. 355,543 (registered March 22, 1938 for the designation LIFEGUARD used on swim trunks), 562,509 (registered on August 5, 1952 for the designation LIFEGUARD on men's underwear),  2,754,820 (registered on August 26, 2003 for the designation LIFEGUARD, inter alia, on T-shirts), and 3,800,325 (registered on June 8, 2010 for the designation LIFEGUARD, inter alia, on T-shirts). (Plaintiffs' Complaint, ¶ 2 and

---

[1] Whether or not Plaintiff's mark is generic is a ripe question of fact.  For example, in Lifeguard Licensing Corp. v. Gogo Sports, Inc., Docket No. 1:10-cv-09075-VSB (SDNY 2010), Judge Crotty issued an Opinion and Order dated August 15, 2013, that a survey conducted for Gogo Sports by Dr. Maronick raised an issue of fact for the trier of fact on whether the "Lifeguard" mark is generic. (Heed Decl., ¶ 9).  That case was settled, so no finding of fact ever issued.  Defendants in the present case have a well-founded basis for questioning the mark and seeking a declaratory judgment in the Michigan Action.

¶ 19).  According to Plaintiffs' Complaint, Popularity Products LLC is a Virginia limited liability company that has an exclusive license with respect to the above registered trademarks for T-shirts.  (Plaintiffs' Complaint, ¶ 3 and ¶ 22).

Ann Arbor T-Shirt expects to produce approximately 540,000 articles of apparel in 2015.  (Winowiecki Decl., ¶ 10).  In 2015, in Ann Arbor, Michigan, Ann Arbor T-Shirt Co. made approximately 6,500 T-Shirts and tank-tops that had the word, "Lifeguard" on the front of the shirt.  (Kozak Decl., ¶ 10).  These shirts were sold exclusively through the Amazon.com Marketplace.  (Kozak Decl., ¶ 10).

On or about September 25, 2015, Ann Arbor T-Shirt Co. received a cease and desist letter from the Defendants, regarding the sale of shirts with "Lifeguard" on the front of the shirt.  (Heed Decl., ¶ 3).  The letter stated, "Unfortunately, it is has come to our attention that Washington Heights Haberdashery, LLC, D/B/A Ann Arbor T-Shirt Company, has been selling significant quantities of counterfeit LIFEGUARD apparel via Amazon.com, and presumably via other channels of sale such as the AnnArborTees website."(Heed Decl., ¶ 3).The letter concluded by stating, "Please be advised that my client has successfully filed several trademark infringement lawsuits over the years, against companies big and small, when its' initial cease and desist letter was not fully complied with. I urge You [sic] not to join the list of Defendants." (Heed Decl., ¶ 3).

Ann Arbor T-Shirt Co. contacted the Defendants, through counsel, to discuss the cease and desist letter.(Heed Decl., ¶ 4).  In subsequent discussions aimed at resolving the matter, the Plaintiffs' counsel continually reiterated the threat of litigation.  (Heed Decl., ¶ 4).  The Defendants expressed willingness to take a license from the Plaintiffs, in order to avoid the expense of litigation.  (Heed Decl., ¶ 4).  This willingness led to a discussion with the Plaintiffs

in which the Plaintiffs demanded that the Defendants purchase licensed product from the Plaintiffs, and re-sell it.  (Heed Decl., ¶ 4).  On October 15, 2015, the Plaintiffs sent a product catalog, including pricing information, to the Defendants in Michigan.  (Heed Decl., ¶ 4).  The Defendants felt that this conduct was a disreputable bait-and-switch, and were reluctant to have any further negotiations with the Plaintiffs.  (Heed Decl., ¶ 4).

On October 16, 2015, in order to ascertain their rights with respect to the word, "Lifeguard," Defendants filed the Michigan Action.  (Heed Decl., ¶ 10).  In the Michigan Action, Ann Arbor T-Shirt Co. requested a declaration that, *inter alia*, their use of the word, "Lifeguard," was strictly functional; the mark LIFEGUARD was generic; and/or the use of the word, "Lifeguard," printed onto the front of t-shirts, is non-infringing conduct, being a fair use and/or a merely descriptive use.  (Heed Decl., ¶ 5-7).  In conjunction with the Michigan Action, Ann Arbor T-Shirts ceased selling any apparel with the word, "Lifeguard," on it.  (Kozak Decl., ¶ 11).  On October 19, 2015, both Lifeguard Licensing Corp., and Popularity Products LLC were served in the Michigan action.  (Heed Decl., ¶ 10).  On October 26, 2015, counsel for Lifeguard Licensing Corp. and Popularity Products LLC requested a stipulation for an extension of time to respond to the Michigan Action.  (Heed Decl., ¶ 12).  On October 27, 2015, Plaintiffs filed the present action in the Southern District of New York.  (Heed Decl., ¶ 13).  On November 16, 2015, Defendants' counsel sent a three page pre-motion letter to counsel for the Plaintiffs, detailing the reasons that the present action should be dismissed, as required by this Court's Individual Rules and Procedures for Civil Cases III(A)(3).  (Heed Decl., ¶ 14).  Finally, on November 17, 2015, Plaintiffs served Defendants in the present case.  (Heed Decl., ¶ 15).

Defendant Kozak lives in Michigan and does not have any contacts with New York.  (Kozak Decl., ¶ 1 and ¶ 7).  Defendant Winowiecki lives in Michigan and does not have any

4

contacts with New York.  (Winowiecki Decl., ¶ 1 and ¶ 7).  Ann Arbor T-Shirt Co.'s operations are entirely located in Ann Arbor, Michigan.  (Kozak Decl., ¶ 10).  Its printing plant is in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of its employees are sited Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of its capital equipment is in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of its business records are in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of the allegations that the Plaintiffs make against the Defendants occurred in Ann Arbor, Michigan.

Amazon.com maintains and runs its own website, including the Amazon Marketplace. (Kozak Decl., ¶ 8).  Amazon.com collects the money from any person purchasing goods on the Amazon Marketplace, including those individuals residing in New York.  (Kozak Decl., ¶ 8). New York charges Amazon.com sales tax for purchases made on the Amazon Marketplace by New York residents, and Amazon.com, in fact, pays those sales taxes directly to the State of New York.  (Heed Decl., ¶ 17; Kozak Decl., ¶ 8).  Amazon.com retains all payments and remits them to Ann Arbor T-Shirt, its portion, on a rolling fourteen (14) day cycle.(Kozak Decl., ¶ 8). Amazon.com maintains account information and credit card information for customers, including those customers residing in New York.  (Kozak Decl., ¶ 8).  Amazon.com advertises Amazon Marketplace to persons nationwide, including those from New York.  (Kozak Decl., ¶ 8).  Ann Arbor T-Shirt Co. fulfills orders given to it by Amazon.com.  (Kozak Decl., ¶ 8).  Ann Arbor T-Shirt Co. receives payment from Amazon.com for fulfilling those orders.  (Kozak Decl., ¶ 8). Ann Arbor T-Shirt Co. does not pay sales tax to the State of New York for any transaction performed by the Amazon.com website.  (Kozak Decl., ¶ 7).  Amazon.com retains the right to determine the content, appearance, design, functionality and all other aspects of their site and the services they provide.  (Kozak Decl., ¶ 9).  Amazon.com maintains a delisting process for any objectionable goods being offered for sale.  (Kozak Decl., ¶ 9).

## I.     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT IS A COMPULSORY COUNTERCLAIM, UNDER FRCP 13, OF A PRIOR FILED MICHIGAN ACTION

### A.     The General Rule is That the First Filed Suit Should Have Priority

"[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second."  Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir.1986) citing Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir.1986); Adam v. Jacobs, 950 F. 2d 89, 92 (2d Cir. 1991) citing First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir.1989).  "[T]he general principle is to avoid duplicative litigation." Curtis v. Citibank, NA, 226 F. 3d 133, 138 (2d Cir. 2000) citing Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir.1991).

### B.     A Compulsory Counterclaim is Necessarily Duplicative

When the second suit is a compulsory counterclaim of the first suit, the litigation is duplicative.  See Adam, 950 F.2d at 94.  Fed.R.Civ.P. 13 defines a compulsory counterclaim, in whole:

> COMPULSORY COUNTERCLAIM.
> (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

"Whether a counterclaim is compulsory or permissive turns on whether the counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim,' and this Circuit has long considered this standard met when there is a 'logical relationship' between the counterclaim and the main claim." Jones v. Ford Motor Credit Co., 358

F. 3d 205, 209 (2d Cir. 2004), quoting <u>United States v. Aquavella</u>, 615 F.2d 12, 22 (2d Cir.1979).  A claim is compulsory if "a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  <u>Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.</u>, 233 F.3d 697, 699 (2d Cir. 2000).

**C.**  **It Is an Abuse of Discretion not to Dismiss a Second Filed Suit When It Is a Compulsory Counterclaim of the First Filed Suit**

A district court's decision whether to stay or dismiss an action on grounds of comity is a matter of discretion that may be reviewed only for an abuse of discretion.  <u>AEP Energy Services Gas Holding v. Bank of America</u>, 626 F. 3d 699, 719 (2d Cir. 2010) citing <u>Adam v. Jacobs</u>, 950 F.2d 89, 92 (2d Cir.1991).  "[H]owever, a district court can go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit."  <u>Adam</u>, 950 F.2d at 92 citing <u>Semmes Motors, Inc. v. Ford Motor Co.</u>, 429 F.2d 1197, 1204 (2d Cir.1970).  The United States Court of Appeals for the Second Circuit holds that it is an abuse of discretion for a trial court to not dismiss a later filed suit, when it is a compulsory counterclaim of an earlier filed suit.  <u>Adam</u>, 950 F. 2d at 94.  Specifically, the <u>Adam</u> Court held that it was an abuse of discretion not to dismiss a later filed suit in the Southern District of New York when that suit was a compulsory counterclaim of a prior-filed Declaratory Judgment Act suit brought in Michigan.  <u>Adam</u>, 950 F. 2d at 92-94.

**D.**  **The Present Suit Should be Dismissed Because It Is a Compulsory Counterclaim of an Earlier Filed Declaratory Judgment Act Suit in the Eastern District of Michigan**

Here, Ann Arbor T-Shirt filed the Michigan Action first.  (Heed Decl., ¶ 10).  In the Second Circuit, "the chief 'special circumstances'" is the court's interest in discouraging forum

shopping and a rush to the courthouse door.   Motion Picture, 804 F.2d at 19.   Lifeguard Licensing Corp. and Popularity Products LLC were promptly served in the Michigan Action. (Heed Decl., ¶ 10).  Lifeguard Licensing Corp. and Popularity Products LLC sought to delay the Michigan Action, and, only subsequently, filed the present action.  (Heed Decl., ¶ 12-13).  The Plaintiffs in the present action were dilatory in that they failed to serve the present action until after their counsel had received a pre-motion letter from the Defendants' counsel, seeking to dismiss the present action.   (Heed Decl., ¶ 14-15).   Defendants ceased using the word, "Lifeguard," on the front of T-shirts and tank-tops, pursuant to the Michigan Action, even though the Defendants believe that they are not infringing the Plaintiff's mark.  (Kozak Decl., ¶ 11).By ceasing production, Defendants' right to sell a non-infringing shirt in commerce is clearly being prejudice, and Defendants had every right to file the Michigan Action in order to expeditiously vindicate their rights.  Additionally, Plaintiffs cannot complain about a rush to the courthouse door, because they are clearly not rushing to do anything.  The present suit is the second filed suit, and it has no special considerations or balance of convenience which would justify ignoring comity for the Michigan Action.

Additionally, the present action is a compulsory counterclaim of the Michigan Action. The Michigan Action seeks a declaration that Ann Arbor T-Shirt's use of the word, "Lifeguard" does not infringe Lifeguard Licensing Corp.'s trademark, because the mark is generic or Ann Arbor T-Shirt Co.'s use is functional, fair, or descriptive.  (Heed Decl., ¶ 4-7 and 9-10).  The present action seeks to hold Ann Arbor T-Shirt liable for trademark infringement for using the word, "Lifeguard" on the front of shirts that it sells.  There is clearly a logical relationship between the Michigan Action and the present action.  Additionally, they both arise out of the same transactions and occurrences.

For these reasons, the Court should dismiss the present action, consistent with the holding of <u>Adam</u>, 950 F.2d at 94, because the present action is a compulsory counterclaim of the prior-filed Michigan Action, and no special circumstances or balance of conveniences exists which would justify denying comity to the Michigan Action.

## II.   THE COURT SHOULD DISMISS THE COMPLAINT UNDER FRCP 12(B)(2) BECAUSE IT IS LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of an action when a court lacks personal jurisdiction over the Defendants.  <u>Hutton v. Priddy's Auction Galleries, Inc.</u>, 275 F. Supp. 2d 428, 435 (S.D.N.Y. 2003).   The Plaintiff bears the burden of proving personal jurisdiction over each defendant by a preponderance of the evidence.  <u>See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566-67 (2d Cir. 1996).   To survive a motion to dismiss, the Plaintiffs must make a prima facie showing that the Defendants are subject to personal jurisdiction in New York.  <u>Autogenomics, Inc. v. Oxford Gene Technology Ltd.</u>, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

As a preliminary matter, the Defendants maintain that the Plainitiffs failed to make a prima facie showing that New York has personal jurisdiction over the Defendants**.**   In their Complaint, the Plaintiffs incorrectly asserted that Defendants sold T-Shirts bearing the word, "Lifeguard," through their own website, annarbortees.com.  (Pls. Compl. ¶8).  However, in their September 25, 2015, cease and desist letter, the Plaintiffs clearly had positive knowledge that Defendants sold the shirts in question through Amazon.com.  (Heed Decl. ¶3).  In fact, Ann Arbor T-Shirt Co. only sold T-Shirts bearing the word, "Lifeguard," through Amazon.com.  (Kozak Decl. ¶10).  Defendants believe that the Plaintiffs knowingly misrepresented the sales channels through which Ann Arbor T-Shirt Co. sold T-Shirts bearing the word, "Lifeguard," in order to establish personal jurisdiction over the Defendants in the State of New York.  As a

result, the Plaintiff's Complaint is facially defective with respect to establishing personal jurisdiction over the Defendants, and it must be dismissed under Fed.R.Civ.P. 12(b)(2).

A formal analysis of personal jurisdiction in New York is normally a two-step inquiry, requiring the application of both statutory and constitutional components. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1333 (Fed. Cir. 2001).  First, the court must determine whether New York's general or long arm jurisdiction statutes allow the Court to assert personal jurisdiction over the nonresident defendants.  See LaMarca Pak-Mor Mfg. Co., 713 N.Y. 2d 210, 214 (2000). Second, if New York's long arm statute allows for jurisdiction, the Court must conduct a Federal due process analysis to determine whether the assertion of jurisdiction offends the Due Process Clause of the Fourteenth Amendment.  See id.

### A.   Defendants Are Not Subject to Personal Jurisdiction in this Court Under the New York Statutes.

#### 1.   New York has no general jurisdiction over Defendants.

Under New York Civil Practice Law and Rules ("C.P.L.R.") §301 (New York's general jurisdiction statute) "a court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."   Under C.P.L.R. §301, "[a] corporation is `doing business' and is therefore `present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000).

New York courts have focused on several factors to support a finding that a defendant was "doing business," including "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York."  Landoil Res. Corp. v. Alexander & Alexander

Serv. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).  The shipment of goods into New York is not sufficient to constitute "doing business."  Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983).  Additionally, mere solicitation of business within New York is not enough to find general jurisdiction over an out-of-state defendant.  *See* Aquascutum of London, Inc. v. S.S. Amer. Champion, 426 F.2d 205, 211 (2d Cir. 1970).  Solicitation combined with evidence that the defendant engages in other activities of substance in the state may create personal jurisdiction.  Landoil 918 F.2d at 1043-44.  In order to establish personal jurisdiction under C.P.L.R. §301, plaintiff must demonstrate that the defendants engaged in "continuous, permanent, and substantial activity in New York."  Landoil 918 F.2d at 1043 (to assert general jurisdiction under section 301, "New York law requires that the defendant be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity").

Here, Defendants Kozak and Winowiecki live in Michigan and do not have any contacts with New York.  (Kozak Decl., ¶ 1 and ¶ 7; Winowiecki Decl., ¶ 1 and ¶ 7).  Defendant Ann Arbor T-Shirt Co.'s operations, including its printing plant, are entirely located in Ann Arbor, Michigan.  (Kozak Decl., ¶ 10).  All of its employees work in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of its capital equipment is in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of its business records, both electronic and tangible, are in Ann Arbor, Michigan (Kozak Decl., ¶ 10).  All of the allegations that the Plaintiffs make against Defendants occurred in Ann Arbor, Michigan.

Ann Arbor T-Shirt Co. apparel is advertised and sold in New York only through Amazon.com.  (Kozak Decl., ¶ 8).  Ann Arbor T-Shirt Co. fulfills orders given to it by Amazon.com.  (Kozak Decl., ¶ 8).  Ann Arbor T-Shirt Co. receives payment from Amazon.com for fulfilling those orders.  (Kozak Decl., ¶ 8).  Amazon.com maintains the website through

which sales are made into New York; it advertises to, and solicits business from, persons living in New York; it collects the money for any person purchasing goods from New York; it retains the money collected from persons purchasing goods and disburses it on a rolling 14 (fourteen) day cycle; and it maintains account information, including credit card information, from those persons living in New York.  (Kozak Decl., ¶ 8).  Amazon.com retains the right to determine the content, appearance, design, functionality and all other aspects of their site and the services they provide.  (Kozak Decl., ¶ 9).  Amazon.com maintains a delisting process for any objectionable goods being offered for sale.  (Kozak Decl., ¶ 9).

Perhaps most tellingly, New York has identified Amazon.com as the seller in these transactions by taxing them.  New York charges Amazon.com sales tax for purchases made on the Amazon Marketplace by New York residents, and Amazon.com, in fact, pays those sales taxes directly to the State of New York.  (Heed Decl., ¶ 17; Kozak Decl., ¶ 8).  Ann Arbor T-Shirt Co. does not pay sales tax to the State of New York for any transaction performed by the Amazon.com website.  (Kozak Decl., ¶ 7).

Under these conditions, New York cannot exercise personal jurisdiction under C.P.L.R. §301.  The Defendants do not solicit in New York, they are not physically present in New York, and they do not have continuous contacts with New York.  The shipment of goods into New York is not sufficient, by itself, to constitute "doing business." Beacon Enterprises, 715 F.2d at 763; *see also* Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 430-33 (1972) ("mere sales of a manufacturer's product in New York, however substantial, have never made the foreign corporation manufacturer amenable to suit in this jurisdiction"); and Laufer v. Ostrow, 449 N.Y.S.2d 456, 459 (1982) ("foreign supplier of goods or services for whom an independent

agency solicits orders from New York purchasers is not present in New York and may not be sued here, however substantial in amount the resulting orders").

Finally, there is no basis for general jurisdiction against Kozak and Winowiecki in their individual capacities. Kozak and Winowiecki both live and work in Michigan. (Kozak Decl., ¶ 1 and ¶ 7; Winowiecki Decl., ¶ 1 and ¶ 7).  Kozak and Winowiecki neither conduct any business nor own any property in New York. (Kozak Decl., ¶ 1 and ¶ 7; Winowiecki Decl., ¶ 1 and ¶ 7).

### 2.     New York has no specific jurisdiction over Defendants.

To obtain specific jurisdiction under New York's Long-Arm Statute, C.P.L.R. §302, where a defendant is not sufficiently present and doing business in New York to be subject to general jurisdiction, there must be a "strong nexus between the plaintiff's cause of action and the defendant's in state conduct." Welsh v. Servicemaster Corp., 930 F. Supp. 908, 910 (S.D.N.Y. 1996).  C.P.L.R. §302 requires that the cause of action 'arise from' the defendant's … transaction of business within New York." Zibiz Corp. v. FCN Tech.Solutions, 777 F. Supp. 2d 408, 420 (E.D.N.Y. 2011).  "Essential to the maintenance of a suit against a nondomiciliary under C.P.L.R. 302(a)(1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272 (1981).This "nexus test[] is interpreted very narrowly by the New York courts." Pieczenik, 265 F.3d at 1333, citing Graphic Controls Corp. v. Utah Medical Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998).

Defendants are subject to personal jurisdiction under C.P.L.R. § 302 only if the Plaintiffs' cause of action arises out of Defendants' transactions within New York.  However, Lifeguard Licensing and Popularity Products are not Ann Arbor T-Shirt Co. customers asserting a claim based on a sales transaction or the use of Ann Arbor T-Shirt Co. products in New York. As discussed, *supra*, Plaintiffs are claiming that products sold in New York, ***by annarbortees.com***,

13

infringed its trademark, subjecting Ann Arbor T-Shirt Co. to liability under the Lanham Act. (Pls.' Compl. ¶8).  This assertion of personal jurisdiction is factually incorrect.Ann Arbor T-Shirt Co. only sold T-Shirts bearing the word, "Lifeguard," through Amazon.com.  (Kozak Decl. ¶10). The Plaintiffs clearly had positive knowledge that Defendants sold the shirts in question through Amazon.com.  (Heed Decl. ¶3).  Defendants believe that the Plaintiffs knowingly misrepresented the sales channels through which Ann Arbor T-Shirt Co. sold T-Shirts bearing the word, "Lifeguard," in order to establish personal jurisdiction over the Defendants in the State of New York.

Defendants maintain that Plaintiffs' misrepresentation is akin to an unwitting admission against interest with respect to personal jurisdiction.  Plaintiffs should be estopped from arguing that sales through Amazon.com can establish personal jurisdiction in the instant case.

Assuming, *arguendo*, that Plaintiff can use Amazon.com sales of apparel bearing the word, "Lifeguard," to assert personal jurisdiction in the instant case, Defendants maintain that such sales do not have the nexus required under New York law.  Ann Arbor T-Shirt Co. apparel is advertised and sold in New York only through Amazon.com.  (Kozak Decl., ¶ 8). Amazon.com maintains the website through which sales are made into New York.  (Kozak Decl., ¶ 8).  Amazon.com advertises and solicits in New York.  (Kozak Decl., ¶ 8).  Amazon.com conducts the sales transaction, collecting money and paying the requisite sales tax, in New York. (Kozak Decl., ¶ 8).  Amazon.com maintains customer account information for people living in New York, including credit card information.  (Kozak Decl., ¶ 8).  Amazon.com retains the right to determine the content, appearance, design, functionality and all other aspects of their site and the services they provide.  (Kozak Decl., ¶ 9).  This means that the Defendants do not avail themselves of New York law, in any way, because all interactions with New Yorkers are handled

by Amazon.com, all money is handled by Amazon.com, all taxes are paid by Amazon.com, and all disputes are handled and resolved by Amazon.com. The operative part of the alleged infringing transactions that occurred in New York were not performed by the Defendants. Clearly, Amazon.com is transacting business in New York, as it handles all of the indicia of a sales transaction. Ann Arbor T-Shirt Co. is not transacting business in New York, as it is not performing any part of the sales transaction.

The Court should find that New York's Long-Arm Statute, C.P.L.R. §302 does not extend to the Defendants in the instant case either because (a) the Plaintiffs' own misrepresentation about Defendants' sales channels shows that the Plaintiffs know that the Defendants' conduct does not establish personal jurisdiction in New York; or (b) the operative part of the alleged infringing transactions that occurred in New York were not performed by the Defendants.

**B.**     **Exercising Personal Jurisdiction Over Defendants in this Action Would Offend the Due Process Clause of the Fourteenth Amendment.**

Even if there were a basis for applying New York's long-arm jurisdiction, the Court should consider a federal due process analysis to determine whether jurisdiction is appropriate over the Defendants. *See* International Shoe Co. v. Washington, 326 U.S. 310, 318 (1945); Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). New York may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" related to the cause of action, between the defendant and the forum state. International Shoe Co. v. Washington, 326 U.S. at 318 (recognizing that a corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.")

### 1. Defendants are not subject to general jurisdiction because Defendants do not have continuous and systematic contacts with New York.

A state my exercise in personam jurisdiction when there are sufficient contacts between the defendant and the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). These contacts must be "continuous and systematic" in order to support general personal jurisdiction over defendants. Id. at 415, 416.

As shown above, all of Defendants' operations are outside of New York. Defendants do not make recurrent business trips to New York. Defendants do not advertise to prospective customers in New York. Defendants do not transact business with New York residents. Defendants' contact with New York does not rise to the level of continuous and systematic, and therefore, cannot confer general personal jurisdiction over them.

### 2. Defendants are not subject to specific jurisdiction in New York.

The test for specific personal jurisdiction requires the Court to examine: (1) whether the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Bank Brussels Lambert v. Fiddler Gonzalez, 305 F.3d 120, 127-28 (2d Cir. 2002).

### (a) Defendants did not purposefully avail themselves of the privilege of conducting activities in New York.

The "purposeful availment" analysis focuses on whether the "defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Bank Brussels, 305 F.3d at 128. The purposeful availment requirement is designed to eliminate personal jurisdiction based on "random, fortuitous, or attenuated contacts" or "unilateral activity of another party or a third person." Id.; Keeton v. Hustler Magazine, Inc., 465 US 770, 774 (1984).

16

Here, Defendants maintain no offices or agents in New York, own no property in New York, and do not travel to New York.  Defendants do not direct marketing efforts into New York, but reach into the state through a third party (Amazon.com).  Defendants' passive website (annarbortees.com) transacts only de minimis business with customers outside of Michigan. (Kozak Decl. ¶5).These contacts are not sufficiently directed at New York in order for Defendants to have purposefully availed themselves of the privilege of conducting business activities in New York and to foresee being haled into court in New York.  In addition, personal jurisdiction should not be based on defendants' "random, fortuitous, and attenuated contacts" with New York or on or of the unilateral activity of another party or a third person transacting business in New York.  In the instant case, Defendants did not purposefully avail themselves of the privilege of transacting business in New York.

**(b)      Plaintiff's claims do not arise out of activities directed at New York.**

Under the second prong of the three-part test, the Court must consider whether Plaintiff's claims arise out of activities directed at New York. <u>Bank Brussels</u>, 305 F.3d at 127.  Here, again, all of the activities that are directed at New York, if any, are performed by a third party, Amazon.com

**(c)      The exercise of jurisdiction would not be constitutionally reasonable.**

In the instant case, the Defendants believe that the exercise of personal jurisdiction by a New York court would be unconstitutionally unreasonable.

> The factors that determine the "reasonableness" of the Court's exercise of jurisdiction over these … Defendants include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Metropolitan Life, 84 F.3d at 568.  The Supreme Court has held, "the defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'"  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) quoting International Shoe , 326 U.S. at 316. "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" World-Wide Volkswagen 444 U.S. at 292 quoting International Shoe , 326 U.S. at 317."[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-8 (1985), quoting World-Wide Volkswagen 444 U.S. at 292.

Requiring Defendants to defend this action would be a massive burden for individuals who are Michigan residents and a company that has no personnel or operations in New York. The alleged infringing goods are a miniscule percentage of Defendants' overall production; the alleged infringing goods that actually made it into New York are a miniscule percentage of a miniscule percentage.  As a result, the total dollar value of all the alleged infringing goods ever shipped into New York, which were transacted by a third party, Amazon.com, likely would not pay for the first trip to New York, nor the first day of court in the Southern District of New York. Defendants do not argue that Plaintiffs may not sue for infringement against small infringers; rather, Defendants argue that haling small infringers to a distant court, creating an expense that surpasses the total alleged infringement, is the very definition of unreasonableness discussed by the Supreme Court in World-Wide Volkswagen, International Shoe and Burger King.  The most efficient and effective relief would be obtained through the Michigan Action. Accordingly, Plaintiff cannot satisfy the third prong, or any prong, of the three-part test, and New York cannot

18

exercise specific personal jurisdiction over Mr. Kozak, Mr. Winowiecki, and Ann Arbor T-Shirt Co.

### III.    CONCLUSION

For all the foregoing reasons, the Court should enter an order dismissing the Complaint in its entirety because the cause of action is a compulsory counterclaim under Fed.R.Civ.P. 13 of a first-filed Michigan Action; and under Fed.R.Civ.P.12(b)(2) for lack of personal jurisdiction. The Plaintiffs can easily seek relief in Michigan by filing a counterclaim in the Michigan Action. Their failure to do so wastes judicial resources and increases the overall cost of this litigation.

Dated:  Ann Arbor, Michigan
         November 30, 2015

Heed Law Group PLLC

By: _____/s/ Thomas P. Heed_____

Thomas P. Heed
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
Telephone: (248) 465-8655
Facsimile: (248) 348-5760
theed@heedlawgroup.com

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
Norris D. Wolff
Joshua K. Bromberg
551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone:    (212) 986-6000
Facsimile:     (212) 986-8866

*Attorneys for Defendants*

**ANN ARBOR T-SHIRT CO. LLC, JERRY KOZAK, and RICHARD WINOWIECKI**