```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
LIFEGUARD LICENSING CORP. and        :  15 Civ. 8459 (LGS)(JCF)
POPULARITY PRODUCTS, LLC,            :
                                     :     MEMORANDUM
            Plaintiffs,              :     AND ORDER
                                     :
      - against -                    :
                                     :
JERRY KOZAK, ANN ARBOR T-SHIRT       :
COMPANY, LLC, and RICHARD            :
WINOWIECKI,                          :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/16
```

In this trademark infringement case, the defendants, Ann Arbor T-Shirt Company, LLC, Jerry Kozak, and Richard Winowiecki (collectively, "Ann Arbor"), have filed a second motion to compel the plaintiffs, Lifeguard Licensing Corp. ("Lifeguard") and Popularity Products, LLC ("Popularity"), to produce documents. The motion is granted in part and denied in part.

Background

As I noted in an earlier opinion, "Lifeguard Licensing owns the federal trademark registrations for the designations LIFEGUARD and LIFE GUARD for use on swim trunks, men's underwear, and T-shirts" and "has granted Popularity an exclusive license with respect to the marks for T-shirts." Lifeguard Licensing Corp. v. Kozak, No. 15 Civ. 8459, 2016 WL 3144049, at *1 (S.D.N.Y. May 23, 2016). Ann Arbor manufactures and sells T-shirts "featuring the word 'Lifeguard.'" Id. Lifeguard filed this action alleging various causes of action under the Lanham Act, 15 U.S.C. § 1051 et seq., including trademark infringement and counterfeiting, as

1

well as state law and common law unfair competition claims. (Complaint, ¶¶ 36-69).

After the defendants moved to dismiss the complaint, but before they submitted an answer, the parties filed dueling motions to compel.  Ann Arbor sought discovery relevant to their likely defenses and counterclaims -- that the mark is generic, that its use by Lifeguard is descriptive or functional, and that Lifeguard has abandoned the mark through a scheme of "naked licensing" -- and also complained that the plaintiffs (1) had failed to search adequately both tangible records and electronically-stored information ("ESI"), (2) had failed to produce material related to the licensing negotiations between Lifeguard and Popularity, and (3) had failed to turn over information relating to prior litigation involving alleged infringement of the relevant marks. Lifeguard Licensing, 2016 WL 3144049, at *2, 4-5; (Defendants' Memorandum of Law in Support of [First] Motion to Compel Production of Documents from Plaintiffs Lifeguard Licensing Inc. and Popularity Products LLC at 7-11).  I refused to compel production of information relevant to defenses or counterclaims that had not yet been raised, holding that pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, such information "was beyond the scope of discovery, at least without leave of court." Lifeguard Licensing, 2016 WL 3144049, at *2.  However, I found that the plaintiffs' assertion that they had already produced all other responsive documents was undermined because they "[did] not appear to have conducted a search sufficient to make confident

2

representations concerning the completeness of their production." Id. at *4.  I therefore required them to conduct a further search of both physical filing systems and electronic document repositories, but not until after the parties had conferred on the proper scope of the defendants' document requests in light of my ruling regarding discovery relevant only to defenses and counterclaims.  Id.  Additionally, I required the plaintiffs to produce documents related to prior litigation "to the extent that the requested documents are in the possession of [plaintiffs' former counsel] Pryor & Cashman and are not otherwise subject to a proper objection."  Id. at *5.  I instructed the parties to meet and confer about "the scope of discovery generally and the plaintiffs' objections to the defendants' documents demands in particular" by May 30, 2016.  Id.  By June 20, 2016, the plaintiffs were to "conduct the further searches required . . . and produce responsive documents."  Id.

The parties conferred by telephone on June 2, 2016 (Declaration of Joshua K. Bromberg dated Aug. 1, 2016, ¶ 2; Declaration of Gerald Grunsfeld dated Aug. 9, 2016 ("Grunsfeld Decl."), ¶¶ 4-5), the same day that the defendants filed their answer, which interposed the anticipated defenses of genericness, descriptive use, functional use, and naked licensing (Answer, ¶¶ 135-139, 141), among others.  After the conference, the defendants propounded to each of the plaintiffs a second set of document requests.  (Defendants' Memorandum of Law in Support of Second Motion to Compel Production of Documents ("Def. 2nd MTC Memo.") at

4; Letter of Thomas P. Heed dated July 21, 2016, attached as Exh. H to Declaration of Thomas P. Heed dated Aug. 1, 2016 ("Heed Decl.")).  Each included a number of requests repeated verbatim from Ann Arbor's first request for production of documents.  (Def. 2nd MTC Memo. at 7-12, 17-18; Defendant's [sic] First Rule 34 Request for the Production of Documents, attached as Exh. A to Heed Decl., ¶¶ 5, 7-8, 13; Defendant's [sic] First Rule 34 Request for the Production of Documents, attached as Exh. B to Heed Decl., ¶¶ 5, 8).

    Ann Arbor now complains that the plaintiffs' responses to the recent requests for production are deficient.  They charge that the responses indicate that the plaintiffs have failed to comply with the directive in my prior discovery order to further search their ESI, are improperly withholding relevant documents, and have interposed improper objections.[1]

---

[1] The defendants argue, in part, that any objections not raised in response to the first set of requests for production cannot be raised in connection with the requests included the second set that were merely repeated from the first set. (Def. 2nd MTC Memo. at 10, 12; Defendants' Reply Memorandum of Law in Support of Second Motion to Compel ("Reply") at 3).  I have not addressed this theory because it would not have made a difference in my decision.

    The defendants also contend that their motion should be granted because the plaintiffs' opposition was filed approximately two and one-half hours late and because its form is "defective" in that it does not comply with the Local Civil Rules. (Reply at 2-3).  I will not grant the motion on either of these bases. However, the format of the plaintiffs' opposition obscured the content and, in the future, the plaintiffs should strive to ensure that their submissions comply with the Local Civil Rules.

Discussion

    A.    Requests No. 5 to Lifeguard and Popularity

These requests were repeated from the first set of requests for production, and ask for documents "relating to the negotiation of, or decision to enter into, an exclusive license[] between Lifeguard Licensing and Popularity Products," including "original license agreements, license extensions, term sheets, drafts, mark-ups, and renewals." (Def. 2nd MTC Memo. at 7, 17). Both defendants objected that drafts "are not discoverable where a final version has been disclosed," citing In re Kidder Peabody Securities Litigation, 168 F.R.D. 459 (S.D.N.Y. 1996), and Lifeguard asserts that it has no drafts anyway. (Def. 2nd MTC Memo. at 7, 17). As to the remainder of the request, the plaintiffs point the defendants to certain documents already produced. (Def. 2nd MTC Memo. at 7, 17).

First, there is no rule that the disclosure of a final draft of a document puts drafts of that document off-limits, and Kidder Peabody does not stand for any such principle. It does find that, under the circumstances of that case, the release of a final report did not make drafts of the report discoverable if they were otherwise protected by a privilege. Kidder Peabody, 168 F.R.D. at 474 ("A client may intend to direct or permit the release of the final version of a document while still intending that his communications with his attorney prior to the finalization of the document remain confidential."). But here, neither plaintiff has attempted to claim that any drafts were privileged. See, e.g.,

5

S.E.C. v. Carrillo Huettel LLP, No. 13 Civ. 1735, 2015 WL 1610282, at *1 (S.D.N.Y. Apr. 8, 2015) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." (quoting In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984))); see also Koumoulis v. Independent Financial Marketing Group, Inc., 295 F.R.D. 28, 46-47 (E.D.N.Y. 2013) (requiring production of draft versions of documents where producing party did not establish that privilege applied), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).  The objection is therefore overruled and any applicable privilege is waived.  Popularity, which has stated that it has "withheld responsive documents" (Def. 2nd MTC Memo. at 17), shall produce those documents.

Lifeguard does not appear to rely on the objection, however, as it indicates that all relevant documents have been produced. (Def. 2nd MTC Memo. at 7; Grunsfeld Decl., ¶ 10).  This seems to be the meat of the dispute.  Ann Arbor does not believe that representation and contends that evidence already disclosed in discovery and at depositions indicates a "careless search" and suggests that the plaintiffs have not produced all responsive documents. (Def. 2nd MTC Memo. at 8).  For example, an email, produced in discovery, between Benny Tebele, the principal of Popularity and Ruben (Ruby) Azrak, the owner of Lifeguard, states that Popularity will send Lifeguard a letter renewing the

6

companies' agreement (Email of Benny Tebele dated Oct. 20, 2010, attached as part of Exh. M to Heed Decl.), yet no such letter was produced (Def. 2nd MTC Memo. at 8, 17).

Ann Arbor further questions the purported licenses and renewals that were produced. The defendants disclosed the following documents, which their attorney asserts comprise "Popularity's unbroken license of the Lifeguard brand from 2008 to present": an October 7, 2008 license agreement for a term extending to December 31, 2010; a February 1, 2011 agreement renewing the license until the end of 2012; an August 8, 2012 letter stating that Popularity "wish[es] to exercise [its] renewal option"; an April 14, 2014 license agreement extending to the end of 2019; and a May 1, 2014 amendment to that license agreement. (Grunsfeld Decl., ¶ 10 & Exh. B). Ann Arbor points out that the chain is not in fact unbroken, as there is no evidence of a license covering the period from December 31, 2010, to February 1, 2011; that the signature on the August 8, 2012 document, purportedly that of Mr. Tebele, bears little resemblance to other examples of his signature and, indeed, appears similar to the signature of Mr. Azrak; and that the April 14, 2014 agreement appears to have been executed while a license renewal was in effect, but "does not purport to supercede [sic], replace, or merge any then current license." (Reply at 6-7). Finally, Ann Arbor questions the dearth of emails produced, asserting that the defendants and their principals "were all well-acquainted with e-mail and use it liberally" (Heed Decl., ¶ 28; Def. Memo. at 8, 18), supporting this contention with

7

examples from documents already disclosed (Reply at 8-9).

I agree that such irregularities suggest that other responsive documents exist, especially in light of the fact that the plaintiffs provide only an unsupported representation from counsel that there are no other documents. (See Grunsfeld Decl., ¶ 10). Although in response to Ann Arbor's first motion to compel, Lifeguard provided a declaration from Mr. Azrak that its tangible documents were searched for license documents (Declaration of Ruben Azrak dated April 18, 2016 ("Azrak Decl."), ¶¶ 7-9), no such evidence describing the plaintiffs' search of ESI accompanies this second motion. Lifeguard and Popularity shall therefore search their ESI for documents responsive to this request. If no additional documents are discovered, each plaintiff shall provide a declaration by a person with personal knowledge outlining the search that was performed and the results.

B. Request No. 7 to Lifeguard

This request is repeated from the first set of requests to Lifeguard. It asks for "documents relating to licenses or sub-licenses of the Marks," including original agreements, extensions, term sheets, drafts, mark-ups, proposals, and renewals. (Def. 2nd MTC Memo. at 9). Lifeguard objects, again citing Kidder Peabody and claiming that all final versions of the agreements between Popularity and Lifeguard have been disclosed. (Def. 2nd MTC Memo. at 9). The objection is overruled for the reasons discussed above, and any claim of privilege has been waived.

Ann Arbor focuses its argument, however, on the fact that

Lifeguard failed to produce any documents "regarding the unexpected termination of the relationship between [Lifeguard] and Authentic Sportswear/Warnaco," a "multi-million dollar licensing arrangement" of twenty years that was terminated in 2010. (Def. 2nd MTC Memo. at 9-10; Grunsfeld Decl., ¶ 12). Lifeguard's counsel states that the company's owner does not recall any such documents. (Grunsfeld Decl., ¶ 12). But, again, the representation is unsupported by an affirmation from the owner or other employee with knowledge. Lifeguard's counsel also quibbles with the defendants' characterization of the termination as "abrupt," noting that "at the end of the Lifeguard-Warnaco relationship, the[] [companies] remained on friendly terms." (Grunsfeld Decl., ¶ 12; Excerpt from Transcript of Deposition of Ruben Azrak dated March 10, 2016 ("Azrak Depo.") at 193). However, Mr. Azrak also states that in the lead-up to the termination, the companies "were not too happy with one another." (Azrak Depo. at 45). In any case, whether or not the termination was abrupt or drawn out, amicable or noxious, it seems likely that documents exist connected with the end of a licensing relationship of such length and value.

Lifeguard shall therefore search its tangible documents and ESI for documents responsive to this request. If no additional documents are discovered, Lifeguard shall provide a declaration by a person with personal knowledge outlining the search that was performed and the results.

C.  Request No. 8 to Lifeguard and Popularity

Ann Arbor repeats from the first set of requests for

9

production its request for documents related to whether the trademarks are generic, including market surveys. (Def. 2nd MTC Memo. at 11, 18). Ann Arbor complains that the documents the plaintiffs have disclosed in response to this request are non-responsive, but focuses on the lack of market surveys in the production, arguing that they are relevant and discoverable. (Def. 2nd MTC Memo. at 11-12, 18-19). However, Mr. Azrak has already asserted that Lifeguard "has never conducted a genericness survey" (Azrak Decl., ¶ 6), and Ann Arbor does not explain why it believes that Popularity has conducted such surveys. The motion to compel is denied on this ground.

   D.   <u>Request No. 13 to Lifeguard</u>

This request, repeated from the first set, seeks documents related to prior litigation pertaining to the trademarks. (Def. 2nd MTC Memo. at 12). Lifeguard asserts that any relevant documents would be from a 2010 litigation against GoGo Sports, Inc., and objects that the documents are in the possession of their prior counsel and subject to a confidentiality order, which would require Lifeguard to provide its former adversary an opportunity to object to their disclosure. (Def. 2nd MTC Memo. at 12). Therefore, Lifeguard asserts that the documents are equally available to Ann Arbor, and Lifeguard should not be required to produce them. (Def. 2nd MTC Memo. at 12). Ann Arbor responds that I have already ordered production of documents in the possession of Lifeguard's prior counsel.

As should be clear from my decision on the defendants' first

motion to compel, I overruled any objection based solely on the fact that Lifeguard's prior counsel had possession of relevant documents. Lifeguard Licensing, 2016 WL 3144049, at *5 (requiring Lifeguard to turn over documents in possession of Pryor & Cashman that are not otherwise subject to proper objection). Lifeguard's argument that the prior decision related only to Request No. 12 from the defendants' first set of requests for production (Grunsfeld Decl., ¶ 15) is frivolous.

The ensuing objection is overruled as well. Lifeguard has not sufficiently explained how documents in the possession of its former counsel and its former adversary are equally available to the defendants. It has not even provided the confidentiality agreement it cites as an obstacle. Indeed, the fact that there is an agreement allowing Lifeguard access -- even if its former adversary can object -- establishes that the plaintiffs "have a relationship that is fundamentally different than the relationship" between the defendants and the entities in possession of the documents.[2]  Integra LifeSciences Corp., 2016 WL 675553, at *2.

E.   Request No. 16 to Lifeguard and Popularity

This request seeks "royalty reports, income statements, monthly financial statements, earning reports, and tax returns"

---

[2] Lifeguard's reliance on S.E.C. v. Strauss, No. 09 Civ. 4150, 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009), is unavailing. In that case, the burdens that would have been imposed on the plaintiff by producing the documents at issue were significant, including limitation of its own access to the material. Id. at *11-12. "The unusual circumstances in Strauss are not at play here." Integra LifeSciences Corp. v. HyperBranch Medical Technology, Inc., Civil Action No. 15-819, 2016 WL 675553, at *2 n.1 (D. Del. Feb. 12, 2016).

from both Lifeguard and Popularity.  (Def. 2nd MTC Memo. at 14, 19).  Both plaintiffs turned over royalty reports, but no other type of financial document.  (Def. 2nd MTC Memo. at 14, 19). Lifeguard objects that the request is overbroad, unduly burdensome, seeks irrelevant information, and that compliance would unduly invade its privacy.  (Def. 2nd MTC Memo. at 14; Grunsfeld Decl., ¶ 16).

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  As the defendants note, this kind of financial information is relevant to the establishment of statutory damages, for which a fact finder looks to evidence such as "the revenues lost by the plaintiff" as a result of the infringement.  Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting Fitzgerald Publishing Co. v. Baylor Publishing Co., 807 F.2d 1110, 1117 (2d Cir. 1986)), abrogated on other grounds, Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 106 (2d Cir. 2012).  The plaintiffs offer no argument regarding relevance, overbreadth, or burden, merely

stating that they "stand by their objection." (Grunsfeld Decl., ¶ 16). However, "general and conclusory objections," such as the unsupported objections Lifeguard interposed in response to this request (Def. 2nd MTC Memo. at 14), "are insufficient to exclude discovery of requested information." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)).

However, I will sustain the objection as to the plaintiffs' tax returns. "[C]ourts are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns." Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015) (quoting Uto v. Job Site Services Inc., 269 F.R.D. 209, 212 (E.D.N.Y. 2010)). Even where the returns are relevant to a claim or defense in the action, the party seeking discovery must demonstrate a compelling need for the documents. See id. In this case, where the defendants already have royalty reports and will be receiving other relevant financial documents, they have not shown a compelling need for the tax returns.

Popularity and Lifeguard shall therefore produce documents in response to these requests, but need not turn over federal or state income tax returns.

    F.    <u>Request No. 29 to Lifeguard and No. 28 to Popularity</u>

The defendants seek disclosure of settlement agreements

concerning the trademarks, which they contend are relevant to the value of the plaintiffs' marks. (Def. 2nd MTC Memo. at 16, 21). The plaintiffs disagree, arguing that "[p]arties enter into settlements for all types of reasons that have nothing to do with the value of the company." (Grunsfeld Decl., ¶ 17). Although this objection recognizes that some settlement agreements might not reflect the value of the subject matter of the settlement, under the broad construction of relevance in the Federal Rules of Civil Procedure, it does not show that the requested information neither "bears on, [n]or [] reasonably could lead to other matter that could bear on" the marks' value here. Oppenheimer Fund, 437 U.S. at 351. Moreover, in this district, settlement agreements have been held to be relevant to the issue of damages in intellectual property cases. See Smith v. NBC Universal, No. 06 Civ. 5350, 2008 WL 483604, at *4 (S.D.N.Y. Feb. 22, 2008) ("[E]vidence of the settlements and their amount are relevant to a determination of the amount of statutory damages . . . . The settlements bear directly on the value of [the plaintiff's] claim."); see also Small v. Nobel Biocare USA, LLC, 808 F. Supp. 2d 584, 586-92 (S.D.N.Y. 2011) (finding settlement agreement relevant to issue of reasonable royalty in patent infringement action).

Conclusion

For the foregoing reasons, the defendants' motion to compel (Docket no. 95) is granted in part and denied in part.[3]  The

---

[3] In light of this outcome, the plaintiffs' request for sanctions (Grunsfeld Decl. at 9) is denied.

plaintiffs shall comply with the requirements outlined above within fourteen days of the date of this order. The fact discovery deadline is extended exclusively for this purpose.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 9, 2016

Copies transmitted this date:

Gerald Grunsfeld, Esq.
Lazar Grunsfeld Elnadev
1795 Coney Island Ave.
Brooklyn, NY 11230

Sean S. Reuber, Esq.
Martin B. Schwimmer, Esq.
Peter S. Slone, Esq.
Leason Ellis LLP
One Barker Ave., 5th Floor
White Plains, NY 10601

Norris D. Wolff, Esq.
Joshua K. Bromberg, Esq.
Kleinberg, Kaplan, Wolff & Cohen, PC
551 Fifth Ave.
New York, NY 10176

Thomas P. Heed, Esq.
Heed Law Group PLLC
39555 Orchard Hill Pl., Suite 600
Novi, MI 48395