```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
LIFEGUARD LICENSING CORP. and       : 15 Civ. 8459 (LGS)(JCF)
POPULARITY PRODUCTS, LLC,           :
                                    :        MEMORANDUM
                Plaintiffs,         :        AND ORDER
                                    :
     - against -                    :
                                    :
JERRY KOZAK, ANN ARBOR T-SHIRT      :
COMPANY, LLC, and RICHARD           :
WINOWIECKI,                         :
                                    :
                Defendants.         :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

>  USDS SDNY
>  DOCUMENT
>  ELECTRONICALLY FILED
>  DOC #: _____
>  DATE FILED: 1/31/17

Déjà vu. For the third time, I find myself addressing alleged deficiencies in the document production of plaintiffs Lifeguard Licensing Corp. ("Lifeguard") and Popularity Products, LLC ("Popularity"). This time, the arguments are presented in the form of a Motion for Contempt and Sanctions filed by the defendants ("Ann Arbor"). The motion is denied.

Background

This is a straightforward copyright infringement action, and the substantive facts have been outlined in previous opinions. See Lifeguard Licensing Corp. v. Kozak, No. 15 Civ. 8459, 2016 WL 4733157 (S.D.N.Y. Sept. 9, 2016), aff'd sub nom. Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., No. 15 Civ. 8459, 2016 WL 5936887 (Oct. 11, 2016) ("Lifeguard Licensing II"); Lifeguard Licensing Corp. v. Kozak, No. 15 Civ. 8459, 2016 WL 3144049 (S.D.N.Y. May 23, 2016) ("Lifeguard Licensing I"). As noted, Ann Arbor now seeks to have Lifeguard and Popularity held in contempt for discovery abuses -- specifically, for failing to comply with my

1

directions in Lifeguard II. (Defendants' Memorandum of Law in Support of Motion for Contempt and Sanctions ("Def. Memo.") at 1.

In Lifeguard I, finding that the plaintiffs had not conducted a sufficient search of their electronically-stored information or physical filing systems, I ordered them to conduct a further search for discoverable material. 2016 WL 3144049, at *4. I also ordered them to turn over discovery from prior litigation concerning the relevant trademarks, even if it was held by the plaintiffs' prior counsel. Id. at *5. The plaintiffs' apparently deficient production in response to that order prompted a second motion to compel, which resulted in an order requiring the plaintiffs to produce, in relevant part, (1) settlement agreements concerning the trademarks at issue, Lifeguard II, 2016 WL 4733157, at *5; (2) royalty reports, income statements, monthly financial statements, and earning reports, id.; (3) documents in Lifeguard's possession, custody, or control concerning licenses and sub-licenses of the trademarks, id. at *3; and (4) documents in Lifeguard's possession, custody, or control concerning a prior action against GoGo Sports, Inc., id. at *4. I denied the defendants' motion to the extent it sought market surveys relating to the genericness of the trademarks, noting that Ruben Azrack, the principal of Lifeguard, had asserted that the company had "never conducted a genericness survey." Id. As to documents in category (3) -- licenses and sub-licenses -- I ordered each plaintiff to "provide a declaration by a person with personal knowledge outlining the search that was performed and the results" in the event that "no additional

2

[responsive] documents [were] discovered." Id. at *3. I also extended the fact discovery deadline, which originally expired on October 11, 2016, exclusively for the purpose of production of these documents or declarations. Id. at *6.

The plaintiffs appealed Lifeguard II to the extent that it required them to produce settlement agreements (Plaintiffs' Objection to a Portion of Magistrate Judge Francis' Discovery Order at 2) and that part of the order was -- eventually -- stayed (Order dated Oct. 3, 2016). The Honorable Lorna G. Schofield rejected the appeal in October 2016. Lifeguard Licensing Corp., 2016 WL 5936887, at *1. Fact discovery is closed.

Discussion

A court may punish a party's failure to comply with a court order where (1) the order violated was clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor was not reasonably diligent in attempting to comply. See City of New York v. Local 28, Sheet Metal Workers' International Association, 170 F.3d 279, 282-83 (2d Cir. 1999).

In the alternative, sanctions -- including harsh sanctions such as dismissing the case or precluding evidence -- may be imposed pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure. When determining the appropriate sanction to impose under Rule 37, courts in this Circuit weigh several factors, including "(1) the willfulness of acts underlying noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on notice

3

that it faced possible sanctions." Sentry Insurance A Mutual Co. v. Brand Management, Inc., 295 F.R.D. 1, 5 (E.D.N.Y. 2013). If a litigant succeeds in its Rule 37(b)(2) sanctions motion, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

    A.   Settlement Agreements

By October 28, 2016, the plaintiffs had produced seven documents related to settlements with six different alleged infringers: Wild Side West, Inc.; J&C; New York Breeze, LLC; L&L Wings, Inc.; GoGo Sports, Inc.; and Breezin' Up, Inc. (Declaration of Thomas P. Heed dated Oct. 31, 2016 ("Heed Oct. Decl."), ¶ 6 & Exh. B, pp. 2-11 (Wild Side West), 12 (J&C), 13-19 (New York Breeze), 20-33 (L&L Wings), 34-72 (GoGo Sports), 73-78 (Breezin' Up).[1] Ann Arbor notes that, during discovery, the plaintiffs "produced cease-and-desist letters addressed to 30 businesses [that] were not subsequently sued," including the Gap and Victoria's Secret, "but have failed to produce a single settlement agreement thereto." (Defendants' Reply Memorandum in Support of Motion for Contempt and Sanctions ("Reply") at 5; Heed Oct. Decl., ¶ 5 & Exh. C). In addition, Ann Arbor asserts that since 2009, Lifeguard has been involved in nine trademark infringement cases

---

[1] I have used the page numbers assigned by the court's Electronic Case Filing system.

that did not go to trial, but produced settlement agreements for only six of these cases.  (Reply at 5; Heed Oct.Decl., ¶ 6 & Exh. E).  Benjamin Tebele, who is the principal of Popularity, and Mr. Azrack each state that he has produced all of the settlement agreements that he has located.  (Declaration of Ruben Azrack date Oct. 23, 2016 ("Azrack Decl."), ¶ 5; Declaration of Benjamin Tebele dated Oct. 23, 2016 ("Tebele Decl."), ¶ 4).

Underpinning the order in Lifeguard II is the notion that a declaration from the principals of Lifeguard and Popularity that they had searched for documents responsive to a particular request and produced all that they had located would be sufficient to satisfy their discovery obligations as to that request.  See Lifeguard II, 2016 WL 4733157, at *3-4.  Indeed, Ann Arbor appears to agree that such a declaration would be effective to show that those obligations have been discharged, as it complains about the lack of a declaration in connection with the plaintiffs' responses to a request for documents regarding the termination of a license with Warnaco, discussed below.  But here, as noted, Mr. Azrack and Mr. Tebele have asserted under penalty of perjury that no additional responsive documents exist.  A litigant "is only required to produce documents that exist." Barton Group, Inc. v. NCR Corp., No. 08 Civ. 5679, 2009 WL 6509348, at * 1 (S.D.N.Y. July 22, 2009).

    B.    Royalty Reports

According to Ann Arbor, Lifeguard produced royalty reports for three licensees but produced no income statements, monthly

5

financial statements, or earnings reports. (Declaration of Thomas P. Heed dated Sept. 30, 2016 ("Heed Sept. Decl."), ¶ 21). Popularity produced three spreadsheets: one showing gross revenue related to sales of products bearing the trademarks and two showing unit sales by product number for those products, one for each of the years 2015 and 2016. (Heed Sept. Decl., ¶ 29). In response, Mr. Azrack and Mr. Tebele each asserted that his company "does not create (or have created on its behalf) income statements/monthly financial statements or earning reports relating to the Lifeguard brand." (Azrack Decl., ¶ 2; Tebele Decl., ¶ 2). The plaintiffs further point out that Lifeguard's personnel comprise Mr. Azrack and an assistant, both of whom divide their time among Lifeguard and Mr. Azrack's "numerous other businesses," concluding, "It is not the least bit surprising that a company that consists of two part time staff does not create income statements/monthly financial statements or earning reports." (Plaintiffs' Memorandum of Law ("Pl. Memo.") at 3).

Ann Arbor points out two areas of concern. The declarations of Mr. Azrack and Mr. Tebele do not state that Lifeguard and Popularity have no income statements, monthly financial statements, or earnings reports, but rather that neither has any relating to the Lifeguard brand. (Reply at 7). However, I fail to see how income statements related to other, non-Lifeguard marks would be relevant here. Second, Ann Arbor alleges that Mr. Tebele testified during his deposition that Popularity employed over one hundred people and that the company had an accounting firm to produce

6

financial statements.  (Reply at 8 n.4).  Ann Arbor wonders why a company of that size would not produce the financial statements requested.  (Reply at 8).  But Ann Arbor has not submitted the deposition transcript in connection with this motion (nor has the relevant deposition testimony been submitted in connection with any of the other motions within my purview), so I am unable to review it in context.

    C.   Licenses and Sub-Licenses

Ann Arbor complains that Lifeguard Licensing did not produce any documents relating to the termination of a license with Warnaco other than a single "inconsequential email." (Def. Memo. at 9). In light of this allegedly deficient production, Ann Arbor insists that "[a]ny reasonable reading of [Lifeguard II] makes it clear that [Lifeguard] must either turn over all documents relating to the termination of [the license] . . . or 'provide a declaration by a person with personal knowledge outlining the search that was performed and the results.'" (Def. Memo. at 9 (quoting Lifeguard II, 2016 WL 4733157, at *4)).  Ann Arbor is wrong on both counts.

First, the email is not "inconsequential," as it indicates that the termination was the result of a failure to renew the license.  That is bolstered by Warnaco's response to Ann Arbor's subpoena stating that the company "did not terminate the Lifeguard License," but rather merely did not renew it (Objections and Responses of Non-Party Warnaco Swimwear, Inc. to Subpoena dated June 17, 2016, attached as Exh. C to Declaration of Gerry Grunsfeld dated Oct. 23, 2016 at 8), and by Mr. Azrack's declaration stating

that the "matter was discussed over the phone and Warnaco did not need to generate any documentation" because "[i]t simply did not provide [Lifeguard] with a renewal request" (Azrack Decl., ¶ 4). Second, by its terms, Lifeguard II ordered Lifeguard to provide a declaration only "[i]f no additional documents [were] discovered." 2016 WL 4733157, at *4. Lifeguard did produce an additional document. To be sure, a less crabbed reading of Lifeguard II might have been warranted in the circumstances of this case. However, I cannot say that Lifeguard violated the letter of the order. Moreover, Mr. Azrack and Mr. Tebele have asserted that they searched for responsive documents and did not locate any. (Azrack Decl., ¶ 3; Tebele Decl, ¶ 3).

   D.   GoGo Sports Litigation

These documents have been turned over, albeit late. (Reply at 6-7). Although that is less than ideal, I will neither hold plaintiffs in contempt nor sanction them on this ground.

   E.   Marketing Surveys

Ann Arbor's Reply claims:

> In [Lifeguard II], this Court denied Defendants' motion to compel with respect to Request No. 8, "documents related to whether the trademarks are generic, including market surveys." In denying this request, the Court relied on a declaration from Ruben Azrak.
>
> On October 19, 2016, Plaintiffs produced an expert report from Jerre Swann, critiquing a market survey that had been performed during the Gogo Sports matter . . . . Material responsive to market surveys was originally requested in January 2016. It was requested a second time in June 2016. Repeatedly, until October 19, 2016, Plaintiffs have denied any such material exists. Their recent production of such materials shows otherwise.

(Reply at 9-10 (emphasis omitted)(citations omitted)).

8

Again, Ann Arbor does not have its facts exactly right. Lifeguard II noted that Ann Arbor focused in its second motion to compel on "the lack of market surveys in the production." 2016 WL 4733157, at *4. Relying on a declaration of Mr. Azrack stating that Lifeguard had "never conducted a genericness survey," I denied the motion to compel as to that issue. Id. The document that Lifeguard has produced is an expert report commenting on a market survey assertedly "performed during the GoGo Sports matter" (Reply at 9), but not by Lifeguard. (Heed Oct. Decl., Exh. H). Mr. Azrack's declaration focused on market surveys performed at Lifeguard's behest.

In any case, Ann Arbor now has what is apparently the only document reasonably available that is responsive.

F.  Plaintiffs' Counsels Emails to Co-Counsel

Ann Arbor objects to the following emails from plaintiffs' counsel Gerald Grunsfeld to their former co-counsel:

> Unfortunately, defense counsel gets a kick out of being confrontational and so they continue to cc you although I have told them not to.
>
> Please ignore all correspondence from them. I am handling all discovery issues.

And then, after a response from former co-counsel

> Thanks cameron and I'm sorry they were hassling you. I have such contempt for them.

(Reply at 3; Heed Oct. Decl., Exh. A). These emails assertedly show that plaintiffs' actions during this litigation are "purposeful and contumacious." (Reply at 2).

I disagree. Instead, I see an appropriate division of labor

among counsel for the plaintiffs. I note, too, that, although Mr. Grunsfeld's comment may be insulting, neither the court's inherent contempt power nor Rule 37(b)(2) of the Federal Rules of Civil Procedure is designed to redress hurt feelings.

Conclusion

"Discovery is never expected to be perfect, boundless nor pursued ad infinitum." Wandering Dago Inc. v. New York State Office of General Services, No. 13 CV 1053, 2015 WL 3453321, at *15 (N.D.N.Y. May 29, 2015). Here, the defendants have not established that the plaintiffs should be held in contempt or sanctioned for discovery violations. Therefore, their Motion for Contempt and Sanctions (Docket no. 107) is denied.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         January 31, 2017

Copies transmitted this date:

Gerald Grunsfeld, Esq.
Lazar Grunsfeld Elnadev
1795 Coney Island Ave.
Brooklyn, NY 11230

Norris D. Wolff, Esq.
Joshua K. Bromberg, Esq.
Kleinberg, Kaplan, Wolff & Cohen, PC
551 Fifth Ave.
New York, NY 10176

Thomas P. Heed, Esq.
Heed Law Group PLLC
39555 Orchard Hill Pl., Suite 600
Novi, MI 48395

Thomas P. Heed, Esq.
Heed Law Group PLLC
39555 Orchard Hill Pl., Suite 600