UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                   :

LIFEGUARD LICENSING CORP., et al.,     :
                             Plaintiffs,   :

                -against-         :
                                                   :

ANN ARBOR T-SHIRT COMPANY, LLC, et  :
al.,                                            :
                          Defendants. :
                                                   :
                                                   X
------------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/09/2018_

15 Civ. 8459 (LGS)

**<u>OPINION AND ORDER</u>**

LORNA G. SCHOFIELD, District Judge:

       This action arises from alleged trademark infringement under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act") and New York state law, regarding the use of the word "LIFEGUARD" on T-shirts. Plaintiffs are Lifeguard Licensing Corporation ("Lifeguard") and Popularity Product, LLC ("Popularity").

       Plaintiff Lifeguard owns four "LIFEGUARD" trademarks in the apparel category (the "Trademark"), all of which have been in continuous use for more than five years since their registration, and are thus deemed "incontestable." *See* 15 U.S.C. § 1065. Plaintiff Popularity is the exclusive U.S. licensee of the Trademarks. Popularity produces T-shirts bearing the word "LIFEGUARD." Defendant Ann Arbor T-Shirt Company, LLC ("Ann Arbor"), a Michigan limited liability company is co-owned by Defendants Richard Winowiecki and Jerry Kozak. Ann Arbor also sold T-shirts bearing the word "LIFEGUARD." Lifeguard never authorized Ann Arbor to use its trademarks.

       Defendants move for summary judgment on all claims based on the affirmative defenses of fair use, functional use and abandonment. Plaintiffs oppose Defendants' motion and cross-move for summary judgment on all of Defendants' affirmative defenses and counterclaims,

except the Second Affirmative Defense and First Counterclaim, which allege that the Trademark

is generic. The Court previously instructed the parties to exclude from their motions the issue of

whether the Trademark is generic as it is the subject of a material factual dispute.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where the record before the court establishes that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the

evidence in the light most favorable to the nonmoving party and must draw all reasonable

inferences in favor of the nonmoving party. *See id.* at 255. When the movant has properly

supported its motion with evidentiary materials, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)

(alteration in original) (internal quotation marks omitted).

An affirmative defense can be dismissed on a summary judgment motion when that

defense is unsupported by any evidence in the record. "Where a plaintiff uses a summary

judgment motion . . . to challenge the legal sufficiency of an affirmative defense -- on which the

defendant bears the burden of proof at trial -- a plaintiff may satisfy its Rule 56 burden by

showing that there is an absence of evidence to support an essential element of the non-moving

party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54–55 (2d Cir. 1994) (citing *Celotex v.

Catrett*, 477 U.S. 317, 325 (1986)); *accord Washington v. Kellwood Co.*, No. 05 Civ. 10034,

2015 WL 6437456, at *9 (S.D.N.Y. Oct. 14, 2015). "[I]n cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the defendant's affirmative defense necessarily renders all other facts immaterial." *F.D.I.C.*, 34 F.3d at 54-55. There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323 (emphasis in original). Conversely, if an affirmative defense is supported by evidence from which a reasonable jury could find the defense applicable, then summary judgment must be denied. *See id.*

Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed. Fed. R. Civ. P. 56(c); *see Jackson v. Federal Exp.*, 766 F.3d 189, 195 (2d Cir. 2014). However, a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims. *Id.*

"Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). Evidence is admissible for summary judgment purposes if it would later be admissible at trial. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Material relied upon at summary judgment need not be admissible in the form presented on the motion; as long as the evidence "will be presented in admissible form at trial," it may be considered on summary judgment. *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order)

(citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)). "'At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.'" *Smith*, 697 F. App'x at 89 (quoting *Fraser v. Goodale*, 342, F.3d 1032, 1036 (9th Cir. 2003)).

## II.    DISCUSSION

### A.    Claims against the Individual Defendants

Defendants move for summary judgment as to Defendants Winowiecki and Kozak, asserting that they are not vicariously liable for any trademark violation of Defendant Ann Arbor. The motion as to Defendant Winowiecki is granted as unopposed. The motion as to Defendant Kozak is denied.

"[U]nder the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active, conscious force behind the defendant corporation's infringement."[1] *Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 515 (S.D.N.Y. 2014); *accord Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 2011 (E.D.N.Y. 2018); *see Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 50 n.6 (2d Cir. 2017) (agreeing with district court's finding that an individual defendant was an "'active conscious force' behind Defendants' infringement."). "A showing that an officer authorized and approved the acts of unfair competition which are the basis of the . . . corporation's liability . . . is sufficient participation in the wrongful acts to make the officer individually liable." *Int'l Diamond Imps.*, 64 F. Supp. 3d at 515 (internal quotation marks

---

[1] Corporate officers also may be liable for contributory or vicarious infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005) (citations omitted).

omitted). "[I]n determining whether the officer's acts render him individually liable, it is immaterial whether . . . he knows that his acts will result in an infringement." *Id.* (internal quotation marks omitted).

Defendant Kozak is the founding member and the co-owner of Ann Arbor, designed Ann Arbor's LIFEGUARD branded apparel, directed Ann Arbor's art department to copy Plaintiffs' design in an email and asked his attorney whether he could "bury" the email during discovery. A reasonable juror could find that Defendant Kozak "authorized and approved the acts of unfair competition which are the basis of the . . . corporation's liability." *Int'l Diamonds Imps.*, 64 F. Supp. 3d at 515. Summary judgment is therefore denied as to his personal liability. *See, e.g.*, *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155, 168, 171 (E.D.N.Y. 2016); *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage., Inc.,* 104 F. Supp. 3d 371, 383 (S.D.N.Y. 2015)*.*

Defendants argue that Defendant Kozak cannot be held individually liable because there is no basis to pierce the corporate veil. This argument is rejected because it misunderstands the applicable law as to Counts I through III, claims based on the Lanham Act. The Lanham Act governs the issue of individual liability of a corporate officer as to these counts.

Defendants' argument is also rejected as to Counts IV and V, the state law claims, as Plaintiffs adduced sufficient evidence from which a reasonable jury could pierce the corporate veil to hold Defendant Kozak liable. "New York's choice of law rules provides that the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, L.L.C.*, 241 F. Supp. 3d 461, 474 (S.D.N.Y. 2017); *accord Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Because Ann Arbor is a Michigan limited liability company, Michigan law applies.

The doctrine of piercing the corporate veil is applicable to limited liability companies. *Florence Cement Co. v. Vettraino*, 807 N.W.2d 917, 922 (Mich. Ct. App. 2011). Under Michigan law, a court "should pierce an entity's corporate veil when 'the corporate entity [is] a mere instrumentality of another entity or individual'; 'the corporate entity [was] used to commit a fraud or wrong'; and 'there [was] an unjust loss or injury to the plaintiff.'" *Grand Rapids Assocs., Ltd. v. Coop Properties, L.L.C.*, 495 F. App'x 598, 600–601 (6th Cir. 2012) (quoting *Foodland Distrib. v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996)). "Michigan law does not require a showing of fraud or illegality before the corporate form will be disregarded. Rather, the corporate veil may be pierced as long as the injustice sought to be prevented [is] in some manner relate[d] to a misuse of the corporate form short of fraud or illegality." *Id.* at 601. Ultimately, "[t]here is no single rule delineating when the corporate entity may be disregarded" and instead, "[t]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Foodland Distrib.*, 559 N.W.2d at 381.

Here, Plaintiffs adduced sufficient evidence from which a reasonable jury could conclude that the three-part test for piercing the corporate veil was satisfied. First, the evidence could support a finding that Ann Arbor was a mere instrumentality of Defendant Kozak; he was one of the two owners of Ann Arbor, knew that LIFEGUARD was a trademark for apparel prior to selling his products, directed the art department of Ann Arbor to copy Plaintiffs' design specifically and then sought to "bury" this evidence during discovery. The same evidence could be sufficient to show that Ann Arbor was used to commit a wrong that caused injury to Plaintiff. *See Dept. of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 247 (Mich. 2010) ("Michigan

courts have recognized, officers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully.").

## B. Statutory Defenses

Under the Lanham Act, even "incontestable" marks are subject to enumerated statutory defenses. *See* 15 U.S.C. § 1115(b). Of these, Defendants move for summary judgment on the affirmative defenses and counterclaims of (i) fair use (Third and Fourth Affirmative Defenses and Fourth Counterclaim), (ii) functional use (Fifth and Sixth Affirmative Defenses and Fifth Counterclaim) and (iii) abandonment (Seventh and Eighth Affirmative Defenses and Second and Third Counterclaims). Plaintiffs cross-move on these claims and defenses as well as the statutory affirmative defenses of (iv) fraud (Sixteenth Affirmative Defense) and (v) prior use (Fifteenth Affirmative Defense).

### 1. Fair Use

The parties cross-move for summary judgment on the fair use defense, which is incorporated in the Third and Fourth Affirmative Defenses and the Fourth Counterclaim. Where a use is a descriptive fair use, the use is unlikely to cause confusion. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 320 (2d Cir. 2013). The fair use defense is available for a "use . . . otherwise than as a mark, of . . . a *term* or device which is *descriptive of and used fairly and in good faith only to describe the goods* . . . ." 15 U.S.C. § 1115(b)(4) (emphasis added); *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455-56 (2d Cir. 2013). "'Resolution of a fair-use defense requires the court to focus on the defendant's (actual or proposed) use.'" *Id.* (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 403 (2d Cir. 2009)).

The fair use defense is available when a defendant's particular use was "'(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" *Guggenheim Capital*, 722 F.3d at 456

(quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000)).[2] Defendants' motion for summary judgment based on the fair use defense is denied because a genuine dispute of fact exists as to each of these three elements.

### a. Use Other than as a Mark

A genuine factual dispute exists as to whether Defendants used the term "LIFEGUARD" as a mark. A particular use is as a mark when the use of a term is "a symbol to attract public attention." *Kelly-Brown*, 717 F.3d at 306 (quoting *JA Apparel, Cop.*, 568 F.3d at 400). "When use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not constitute trade mark use." *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 310 (S.D.N.Y. 2010) (citing *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28, 30–31 (2d Cir. 1997).

Defendants' expert Dr. Maronick states in his declaration that 90% of consumers think "LIFEGUARD" is a generic term. Defendant Kozak's declaration states that Ann Arbor sold its T-shirts on Amazon.com and its own virtual store, both of which clearly stated that the T-shirts were produced by "Ann Arbor T-Shirt Co." However, the LIFEGUARD T-shirts themselves do not contain Ann Arbor's logo or any other reference to Ann Arbor. A reasonable juror could conclude that the word "LIFEGUARD" on the T-shirts overshadowed any indication that the T-shirts were produced by Ann Arbor. *See, e.g.*, *Born to Rock Design, Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588, 2012 WL 3954518, at *8–9 (S.D.N.Y. Sept. 7, 2012) (finding that because the

---

[2] Defendants failed to address in their moving brief two of the three elements of the fair use defense -- whether the use of the mark was "other than as a mark" and made "in good faith." Only in their reply, after Plaintiffs pointed out the deficiency, did Defendants argue these two elements.

T-shirt only bore the phrase "Born to Rock" without any other design, a reasonable juror could conclude that the phrase was used as a mark to reference the source of the T-shirt").

### b. Descriptive Use

A genuine factual disputes exists as to whether Defendants used the term "LIFEGUARD" on their T-shirts in its descriptive sense. "Though the terms of the Act recognize the fair use defense where the name or term is used 'to describe the goods,' that phrase has not been narrowly confined to words that describe a characteristic of the goods, such as size or quality. Instead, we have recognized that the phrase permits use of words or images that are used, . . . in their 'descriptive sense.'" *Cosmetically Sealed Indus.,* 125 F.3d at 30 (quoting 15 U.S.C. § 1115(b)(4)); *accord JBCHoldings N.Y., L.L.C. v. Pakter*, 931 F. Supp. 2d 514, 531 (S.D.N.Y. 2013). "[T]he common law of unfair competition also tolerate[s] some degree of confusion from a descriptive use of words contained in another person's trademark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 119 (2004). The parties dispute whether Defendants used the term "LIFEGUARD" on their T-shirts in the descriptive sense -- i.e., that Defendants' shirts were made or intended for lifeguards.

Defendants adduced evidence showing that 90% of consumers think "LIFEGUARD" is a generic term, that a T-shirt bearing the word "LIFEGUARD" on its front is standard lifeguard apparel to designate lifeguards and its widespread use, that a T-shirt with the term "LIFEGUARD" is the best way to identify lifeguards and that Defendants' LIFEGUARD T-shirts were sold to lifeguards or organizations employing lifeguards. *See Kelly-Brown*, 717 F.3d at 311 ("Courts more readily find a phrase descriptive when it is in common usage."). In contrast, Plaintiffs adduced evidence showing that Defendants' LIFEGUARD T-shirts were not marketed to lifeguards.

### c. Good Faith

A material dispute of fact exists as to whether Defendants' use of the term "LIFEGUARD" was in good faith. Courts "equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *Id.* at 312. "Even where there is no direct evidence of intent, if there is additional evidence that supports the inference that the defendant sought to confuse consumers as to the source of the product, . . . the inference of bad faith may fairly be drawn." *Id.* "Evidence of intending to compete by imitating the successful features of another's product does not necessarily indicate bad faith. Rather, good faith turns on a showing of intent to deceive purchasers as to the source of a product." *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 251 (S.D.N.Y. 2015) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124–25 (2d Cir. 2001)).

Defendants adduced evidence, based on Dr. Maronick's expert opinion, that there is no risk of consumer confusion, that Defendants were unaware that the mark was protected at the time they sold the LIFEGUARD T-Shirts due to the widespread and long-term use by others of shirts bearing the word "LIFEGUARD" and that Defendants sought to negotiate a license from Plaintiffs upon learning of the alleged infringement.

In contrast, Plaintiffs adduced evidence showing that Defendant Kozak, in his deposition, stated that he knew that LIFEGUARD was a trademark for apparel prior to selling his products, that he directed the art department of Ann Arbor to copy Plaintiffs' design specifically and that he sought to "bury" this evidence during discovery.

\*　\*　\*

Because a reasonable jury could find for either Plaintiffs or Defendants on each of the elements of fair use, the parties' cross-motions for summary judgment based on that defense are denied.

## 2. Functional Use

 "[I]f a markholder has successfully demonstrated that its mark is valid and that the competitor's mark is likely to cause confusion, the competitor can nevertheless prevail . . . by showing that the mark is functional." *Christian Louboutin S.A. v. Yves St. Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012); 15 U.S.C. 1115(b)(8)); *accord Victorinox AG*, 709 F. App'x at 48. "Registration of the mark creates a presumption that the mark is not functional." *Victorinox AG*, 709 F. App'x at 48. There are two forms of functional use: (1) traditional or utilitarian; and (2) aesthetic. *Christian Louboutin S.A.*, 696 F.3d at 219. As relevant here, a feature of a product is traditionally functional when it is "essential to the use or purpose of the article." *Id.* (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10 (1982)). An essential feature is one that is "dictated by the functions to be performed by the article." *Id.* (internal quotation marks omitted).

Summary judgment based on the functional use doctrine (Fifth and Sixth Affirmative Defenses and Fifth Counterclaim) is denied because a reasonable jury could find for either party on this issue. Defendants adduced evidence showing that wearing a T-shirt with the word "LIFEGUARD" is the best way to identify lifeguards because those T-shirts were in widespread use to identify lifeguards. Plaintiffs adduced evidence that that the T-shirts were not exclusively or even predominantly used by lifeguards, but rather were worn as fashion apparel. For example, the word "LIFEGUARD" is used on various other products, such as towels, canvas bags, hats,

bottle cooler, keychain and shot glasses. Based on this evidence, a jury could find that the use of the word "LIFEGUARD" on the T-shirts was not essential to their function.

Defendants' reliance on *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 822–23 (4th Cir. 2001), to support the argument that the word "LIFEGUARD" is functional is unpersuasive for two reasons. First, *America Online, Inc.* is not binding precedent in the present case. Second, in *America Online, Inc.*, the Fourth Circuit concluded that the phrase, "you have mail," was functional because it had no other function except to notify that an email has arrived. *Id.* at 822. In contrast, the word "LIFEGUARD" has functions beyond identifying the wearer as a lifeguard, since the word has been used by non-lifeguards and on products for fashion or decorative purposes.

### 3. Abandonment

Summary judgment is denied on the issue of Plaintiffs' abandonment of the mark (Seventh and Eighth Affirmative Defenses and Second and Third Counterclaims). If a trademark owner, through action or inaction, "causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise lose its significance as a mark," 15 U.S.C. § 1127, the trademark is deemed abandoned and may be cancelled. *See* 15 U.S.C. §§ 1115(b)(2), 1119. Once abandoned, a mark returns to the public domain and may be appropriate for others to use. *ITC, Ltd. v. Punchigini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007). "Where a licensor retains no control over the nature or quality of goods or services provided in connection with the mark, . . . such naked licensing will result in abandonment." *Patsy's Italian Restaurant, Inc. v. Banas*, 508 F. Supp. 2d 194, 212 (S.D.N.Y. 2007) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959)); *accord LPD N.Y., LLC v. Adidas Am., Inc.*, No. 15 Civ. 6360, 2017 WL 1162181, at *13 (E.D.N.Y. Mar. 27, 2017); *see also Patsy's Italian*

*Rest.*, 658 F.3d at 265 ("[N]aked licensing will lead to an abandonment of a mark [but] only where the mark loses its significance."). "The critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is whether the licensees' operations are policed adequately to guarantee the quality of products sold under the mark." *Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, 295 F. Supp. 3d 381, 393 (S.D.N.Y. 2018). "Because it constitutes a forfeiture of a property right, abandonment of a mark must be proven by clear and convincing evidence." *Alzheimer's Disease and Related Disorders Assn., Inc. v. Alzheimer's Found. of Am., Inc.,* No. 10 Civ. 3314, 2018 WL 2122829, at *32 (S.D.N.Y. Apr. 20, 2018) (internal quotation marks omitted).

In this case, a material dispute of fact exists as to whether Plaintiffs' policing of the Trademark was adequate. Defendants adduced evidence showing that Plaintiff Azrak rarely policed the use of the Trademark himself because he had many other business concerns, that Plaintiff Azrak did not have any design standard and that he used solely his discretion in policing the Trademark. Defendants also adduced evidence of a map showing the regions where infringements were found and/or searched, and this map revealed that the search conducted by Plaintiffs' private detective was not comprehensive. In contrast, Plaintiffs adduced evidence showing that they paid approximately $36,000 in fees to a private investigator to search of counterfeit Lifeguard apparel, and spent approximately $1 million in legal fees to police the Trademark through litigation or cease and desist letters. Plaintiffs also adduced evidence showing that every piece of LIFEGUARD apparel contained a hand tag with a warning that the product is trademarked and that the trademark will be enforced.

That the court in *Lifeguard Licensing Corp. v. Gogo Sports, Inc.*, No. 10 Civ. 9075, 2013 WL 4400520, at *4 (S.D.N.Y. Aug. 15, 2013), concluded that Plaintiffs adequately supervised

their mark is irrelevant.  The court in *Gogo Sports* had before it a different evidentiary record.  In that case, unlike this one, the defendants failed to "present *any* evidence of Lifeguard's inadequate license supervision."  *Id.* (emphasis added).  Whether Defendants' evidence is sufficient to show Plaintiffs' abandonment of the mark by clear and convincing evidence is a question for the jury.

### 4. Fraud

Summary judgment is granted on the Sixteenth Affirmative Defense alleging fraud on the United States Patent Trademark Office ("USPTO"), *see* 15 U.S.C. § 1115(b)(1), because Defendants have adduced no evidence to support it, either by reference in their memorandum of law or their Rule 56.1 counterstatement.  Defendants' vague and tentative allegation that "[t]o the extent that [Plaintiff] is a sham business entity, or is an entity whose corporate form can be pierced . . . , its filings with the USPTO are potentially fraudulent" is insufficient to sustain this affirmative defense.

### 5. Prior Use

The "prior use" defense is available under certain circumstances to defeat a trademark holder's claim that a mark has become incontestable.  15 U.S.C. § 1115(b)(5).  To establish a prior use defense, "the defendants must show that [they were] a prior user of the mark in the United States, and that [their] use of the mark was 'continuous and uninterrupted' from a date prior to plaintiff's registration to the present."  *Haggar Intern. Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 130 (E.D.N.Y. 2012) (citation omitted).

Here, summary judgment is granted on Defendants' prior use defense, the Fifteenth Affirmative Defense, because they have adduced no evidence to suggest that they used the LIFEGUARD mark before the registration of Plaintiffs' marks, either by reference in their

memorandum of law or their Rule 56.1 counterstatement. *See, e.g.*, *Architemps, Inc. v. Architemps, Ltd.*, 704 F. Supp. 39, 40 (S.D.N.Y. 1988) (finding that no prior use defense because the defendant failed to show that it actually used the mark in California prior to the plaintiff's registration of the mark).

### C. Other Affirmative Defenses

#### 1. Lack of Personal Jurisdiction

Plaintiffs' motion for summary judgment as to the affirmative defense of lack of personal jurisdiction (First Affirmative Defense) is granted because the record contains no evidence to support it.

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question," the Court engages in a two-step inquiry to determine whether it has personal jurisdiction over a defendant. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). First, the Court determines whether there is personal jurisdiction over the defendant under the laws of the forum state. *Id.* If the forum state's laws allow for personal jurisdiction, the Court determines whether personal jurisdiction comports with the protections established by the Due Process Clause of the Constitution. *Id.*

The New York long-arm statute provides for the exercise of jurisdiction over an out-of-state defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). New York courts define transacting business as "purposeful activity--some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 299 N.E.2d 604, 607 (N.Y. 1967)). Because §

302(a)(1) provides for specific rather than general jurisdiction, Plaintiffs also must show a nexus between their claims and the defendants' conduct that constitutes transacting business in New York. *See* N.Y. C.P.L.R. § 302(a)(1) ("As to a cause of action arising from any of the acts enumerated in this section . . ."). "Proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades*, 799 F.3d at 168 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)). A website that does more than provide information about a product and allows customers to purchase goods online is a "highly interactive website," which may provide a basis for personal jurisdiction under § 302(a). *See Chloe* 616 F.3d at 170 (holding that operation of highly interactive website plus over 50 shipments of counterfeit goods into New York was sufficient for personal jurisdiction); *accord Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15 Civ. 8459, 2016 WL 3748480, at *3 (S.D.N.Y. Jul. 8, 2016).

Here, the record shows that Defendants received approximately $12,500 from their sale of their Lifeguard products to New York customers, and that Defendants systematically targeted the New York market by deliberately tagging 10,000 of their products with New York related keywords in Amazon's mega-tag field so that these products would appear in a search result on Amazon.com if the customer searched for a New York themed product. Defendants on their own Ann Arbor T-shirt website also listed New York themed products for sale, and stated that they would directly ship any orders placed on their website. Defendants have not adduced any evidence to the contrary. *See, e.g.*, *Grand v. Schwarz*, No. 15 Civ. 8779, 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016) (holding that interactive and commercial website provides support for jurisdiction under § 302(a)(1)); *EnviroCare Techs., LLC v. Simanovsky*, No. 11 Civ. 3458,

2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (articulating "sliding scale" of website interactivity and relationship of interactivity to personal jurisdiction analysis).

As personal jurisdiction in this case is based on specific rather than general jurisdiction, the cases cited by Defendants are inapplicable. *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) (finding that there is no general personal jurisdiction over a defendant who is incorporated or headquartered out-of-state and there is no specific personal jurisdiction over a non-resident defendant, where the defendant's activity is unrelated to the claim); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017) (finding that the general jurisdiction inquiry does not focus solely on the magnitude of a defendant corporation's in-state contacts). Accordingly, summary judgment is granted, striking Defendants' First Affirmative Defense asserting lack of personal jurisdiction.

### 2. Unclean Hands

Summary judgment is granted on Defendants' unclean hands affirmative defense, the Tenth Affirmative Defense, because they have adduced no evidence to support it, either by reference in their memorandum of law or their Rule 56.1 counterstatement.

### 3. First Amendment

Plaintiffs' motion for summary judgment as to the First Amendment defense and the Eighteenth Affirmative Defense is granted as abandoned. Defendants do not respond on this issue except to assert generally that a motion to strike a defense at the summary judgment stage is "untimely," which, as discussed in the "Standard of Review" section above, is patently incorrect.

### 4. Estoppel – Expert Survey in a Prior Lawsuit

The Answer asserts an affirmative defense of estoppel because "Plaintiffs' efforts to rebut and overcome the Maronick Survey [in a prior lawsuit] were inadequate." Summary judgment on this defense is granted as the defense lacks any factual basis. The Maronick Survey addressed whether the term "LIFEGUARD" is generic. That issue was not decided in the prior proceeding as is necessary for collateral estoppel. *See Abdelal v. Kelly*, 726 F. App'x 8, 11 (2d Cir. 2018) (summary order) (citing *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995)). Instead, the court in the prior case found a triable issue of fact and denied both sides' cross-motions for summary judgment on the question of whether the LIFEGUARD marks are entitled to protection. *Gogo Sports*, 2013 WL 4400520, at \*7. Summary judgment is granted striking the Fourteenth Affirmative Defense.

### 5. Unconstitutionality of Statutory Damages

Summary judgment is granted striking the Thirteenth Affirmative Defense, which asserts that statutory damages under some unspecified statute (presumably the Lanham Act) are unconstitutional because they are excessive and disproportionate. Defendants cite no legal authority supporting this defense, and the two cases they cite for the proposition that "the Supreme Court has tightened Congress' ability to legislate . . . ." are completely irrelevant. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (addressing the injury-in-fact requirement for Article III standing); *Coll. Sav. Bank v Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999) (holding that state entity had sovereign immunity for alleged trademark violation because its immunity had not been abrogated by statute or voluntarily waived).

### 6.   Lack of Defendants' Willful Conduct

Summary judgment is denied on the Seventeenth Affirmative Defense, which alleges that Defendants did not act intentionally or willfully.  To the extent intent is relevant to liability or damages as to any of Plaintiffs' claims, there are disputed issues of material fact.  *See, e.g.*, 15 U.S.C. § 1117(c)(2) ("[I]f the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" is available as damages).

Defendants adduced evidence that there was no willful conduct; Defendant Kozak stated in his declaration that Defendants were unaware of the trademark registration at the time they sold the LIFEGUARD T-shirts due to the widespread and long term use of the mark on similar shirts sold by others, and that Defendants sought to negotiate a licensing agreement with Plaintiffs upon learning of the alleged infringement.  In contrast, Plaintiffs adduced evidence showing that Defendant Kozak directed Ann Arbor's art department to copy Plaintiffs' design, that as of the end of 2014, Defendants were aware of Plaintiffs' trademark and that despite this knowledge, Defendants continued to sell their products.  This issue presents a triable issue of fact.

### D.   Non-Affirmative Defenses

Plaintiffs move to strike three affirmative defenses relating to consumer confusion. Consumer confusion is an element of all three of Plaintiffs' Lanham Act claims.  *See* 15 U.S.C. § 1114(1) (trademark infringement); 15 U.S.C. § 1114(1)(b) (counterfeiting); 15 U.S.C. § 1125(a)(1)(A) (false designation of origin).  Accordingly, these "defenses" are not actually affirmative defenses.  "'An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all

allegations in the complaint are true.'" *Saks v. Franklin Covey Co*., 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed.1999)).  Nevertheless, Rule 56(a) allows for a summary judgment motion on a claim or defense or a part of a claim or defense.  Fed. R. Civ. P. 56(a).  Accordingly, Plaintiffs' motion for summary judgment is considered and denied, for the reasons explained below.

### 1. Consumer Confusion

Lack of consumer confusion is the basis for two of Defendants' affirmative defenses, the Ninth and Nineteenth.  Plaintiffs move to strike these affirmative defenses on the ground that consumer confusion is assumed as a matter of law because Defendants produced an identical counterfeit of Plaintiffs' mark.

"[L]ikelihood-of-confusion . . .  turns on whether ordinary consumers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [the junior user's] mark. . . . [S]atisfaction of the likelihood-of-confusion standard requires a probability of confusion, not a mere possibility."  *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (internal quotation marks and citations omitted).  This determination typically is based on the application of the so-called *Polaroid* factors: "the strength of the senior user's mark; the similarity of the parties' marks; the proximity of the parties' areas of commerce; the likelihood that the senior user will bridge the gap separating their areas of activity; the existence of actual consumer confusion; whether the junior user acted in bad faith or was otherwise reprehensible in adopting the mark; the quality of the junior user's product; and the sophistication of the relevant consumer group."  *Id*. (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

Defendants have adduced evidence, based on Dr. Maronick's declaration, that there is no risk of consumer confusion, in part because the word "lifeguard" is not associated with any company. In contrast, Plaintiffs adduced evidence showing that two of Defendants' T-shirts appear to be identical to two of Plaintiffs' T-shirts and that Defendants' T-shirts contained no other mark other than the term "LIFEGUARD," which could lead to consumer confusion about the source of the product. Based on this evidence, a material dispute exists as to the issue of consumer confusion about the source of the allegedly infringing product.

### 2. Fame

Plaintiffs' motion to strike the Twentieth Affirmative Defense -- that the Trademark has not reached the level of fame or distinctiveness "to be considered a famous mark" -- is granted. "The theory is that a mark similar to a famous mark is more likely to cause confusion, or at least more likely to cause a more widespread confusion, than a mark similar to a relatively unknown one. The concept of acquired strength has no application in this case, as [Plaintiff] does not claim that its mark is famous." *Guthrie*, 826 F.3d at 41 n.4. However, as discussed above, the broader issue of consumer confusions is preserved for trial.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Defendant Winowiecki who is dismissed from the case, but Defendants' motion is otherwise DENIED. Plaintiffs' cross-motion for summary judgment is DENIED except is GRANTED as to the following affirmative defenses, which are stricken:

- First – lack of personal jurisdiction
- Tenth – unclean hands
- Thirteenth – unconstitutional statutory damages
- Fourteenth – estoppel
- Fifteenth – prior use
- Sixteenth – fraud

- Eighteenth – First Amendment violation.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 192 and 201, and terminate Defendant Winowiecki from the docket.

Dated: July 9, 2018
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE